**In re Daniel FRENCH, Debtor.**

**Bankruptcy No. 87–00107.**

United States Bankruptcy Court, N.D. New York.

June 26, 1989.

Harold P. Goldberg, Syracuse, New York, Trustee.

Gary L. Orenstein, Syracuse, N.Y., for Daniel French.

## MEMORANDUM–DECISION AND ORDER

STEPHEN D. GERLING, Bankruptcy Judge.

The Court considers herein the Application of Harold P. Goldberg, Esq., Trustee ("Trustee") for an order permitting him to pay the sum of $2,500.00 to Gary Orenstein, Esq. ("Orenstein"), as a legal fee for services rendered to the Debtor both pre and post-petition in connection with a state court matrimonial action.

The Application was filed March 10, 1989 and a hearing was held on notice to creditors on March 28, 1989. No party in interest appeared in opposition to the Trustee's Application.

There is no dispute that as a direct result of Orenstein's representation of the Debtor in the state court matrimonial action, the Debtor's estate received $39,000.00.

The Debtor initially filed a voluntary petition pursuant to Chapter 13 of the Bank-

ruptcy Code (11 ·U.S.C.A. §§ 101–1330) (West 1979 & Supp.1988) ("Code"), on January 29, 1987. Thereafter, on November 19, 1987, the Debtor voluntarily converted the case to one pursuant to Chapter 7 of the Code. On or about January 7, 1988, Harold P. Goldberg was appointed to act as Trustee in the Chapter 7 case.

The Trustee indicates that he was aware of the Debtor's pending matrimonial action, but that since he did not practice matrimonial law, he relied upon Orenstein's expertise in pursuing the Debtor's claims in that litigation.

The Trustee alleges further that he believed Orenstein had been paid in full for the services rendered in the matrimonial case, or that in any event, he was "working for the debtor" while Orenstein "was of the opinion that he was in fact working for the estate." (See Trustee's Application, para. 5).

As a result of the misunderstanding, the Trustee contends that he never applied to the Court for an order appointing Orenstein as special counsel, as is permitted under Code § 327(e).

Finally, the Trustee suggests that to avoid an injustice to be practiced upon Orenstein, the Court should invoke its authority under Code § 109 (sic) and issue an appropriate order. The Trustee also refers the Court to Code § 503(b)(3) and (4) as a basis of compensation.

 The Court begins its analysis of the Trustee's Application by considering the services rendered by Orenstein pre-petition. There seems to be little dispute that an attorney who institutes litigation on a debtor's behalf, pre-petition, is entitled to an attorney's charging lien for his fees on any subsequent recovery in that litigation, received by the debtor-estate post-petition, by virtue of § 475 of the New York Judiciary Law. *See In re PDQ Copy Center,* 27 B.R. 123 (Bankr.S.D.N.Y.1983); *In re A. Tarricone, Inc.,* 76 B.R. 53 (Bankr.S.D.N.Y.1987); *In re Van Sanford Tool & Die Co., Inc.,* 75 B.R. 29 (Bankr.N.D.N.Y.1987). Thus, the services rendered by Orenstein in connection with the matrimonial action prior to January 29, 1987 are fully compensa-

ble, since the charging lien relates back to the date that Orenstein assumed representation of the Debtor in the matrimonial action.

In reviewing an affidavit captioned in the state court matrimonial action, sworn to by Orenstein on January 24, 1989, and filed herein on February 8, 1989, it appears that he undertook Debtor's representation as a substitute counsel on October 30, 1985, and that between that date and January, 1987, Orenstein rendered 5.5 hours of services.

 Following the commencement of the Debtor's Chapter 13 case on January 29, 1987, Orenstein continued to represent Debtor in the matrimonial action, absent any appointment pursuant to Code § 327(e). However, because there is no reference in Code § 327 to Chapter 13, this Court has adopted the position that there is no requirement for court ordered appointment of a professional as a condition precedent to the award of a fee in a case filed under that Chapter. Thus, between January 29, 1987 and November 19, 1987, the date of conversion of Debtor's case from Chapter 13 to Chapter 7, Orenstein's lack of appointment as special counsel pursuant to Code § 327(e), is not fatal to his request for compensation.

During the Chapter 13 period, it appears Orenstein rendered an additional two hours in connection with the matrimonial action.

 Upon conversion of the case to Chapter 7, however, the requirement of appointment pursuant to Code § 327(e) became a condition precedent to the payment of any fee for additional services rendered by Orenstein out of assets of the Debtor's estate.

 The fact that Orenstein had a statutory charging lien under § 475 of the New York Judiciary Law would not appear to exempt him from the necessity of appointment pursuant to court order if he was to be compensated for his continued representation of the Debtor in the matrimonial action post-conversion to Chapter 7.

While there is little law on the precise issue presented by this Application, and

although a cursory reading of *In re A. Tarricone, Inc., supra,* 76 B.R. 53 might lead one to the conclusion that the existence of the charging lien which arises prepetition, obviates the need for appointment post-petition pursuant to Code § 327(e), the Court does not believe that to be the case.

It should be noted that *In re A. Tarricone, Inc., supra,* 76 B.R. 53, 54, the attorneys seeking compensation pursuant to a charging lien were in fact appointed post-petition by court order. Similar post-petition appointment was sought even though an attorney's charging lien was in effect in *In re Statewide Pools, Inc.,* 79 B.R. 312 (Bankr.S.D.Ohio 1987). *See also In re Crisp,* 92 B.R. 885 (Bankr.W.D.Mo.1988).

The Court concludes that the existence of the statutory charging lien which arose pre-Chapter 13 by virtue of § 475 of the New York Judiciary Law does not negate the requirement for the Chapter 7 Trustee to have sought Orenstein's appointment pursuant to Code § 327(e) in order to render post-conversion services compensable.

Having failed to obtain such appointment results in the invocation of the "per se" rule of the United States Court of Appeals for the Second Circuit as to any services rendered by Orenstein after November 19, 1987. *See Futuronics Corp. v. Arutt, Nachamie & Benjamin (In re Futuronics Corp.),* 655 F.2d 463, 469 (2d Cir.1981), *cert. denied,* 455 U.S. 941, 102 S.Ct. 1435, 71 L.Ed.2d 653 (1982); *Smith v. Winthrop, Stimson, Putnam & Roberts (In re Sapphire Steamship Lines, Inc.),* 509 F.2d 1242, 2245–46 (2d Cir.1975); *In re Progress Lektro Shave Corp.,* 117 F.2d 602, 604 (2d Cir.1941); *General Motors Acceptance Corp. v. Updike (In re H.L. Stratton, Inc.),* 51 F.2d 984 (2d Cir.1931); *In re Rogers–Pyatt Shellac Co.,* 51 F.2d 988, 992 (2d Cir.1931); *In re Cuisine Magazine, Inc.,* 61 B.R. 210, 216–17 (Bankr.S.D.N.Y.1986); *In re Sapolin Paints, Inc.,* 38 B.R. 807, 817 (Bankr.E.D.N.Y.1984); *Hucknall Agency, Inc. vs. Nanni (Matter of Hucknall Agency, Inc.),* 1 B.R. 125, 126–27 (Bankr.W.D.N.Y.1979).

■ While excusable neglect is considered as a very limited exception to the per se rule, the Court finds nothing in the Trustee's Application which indicates that appointment of Orenstein was due to circumstances beyond either the Trustee or Orenstein's control, or that the failure to seek appointment was due to unique or extraordinary circumstances. *See Beneficial Fin. Co. v. Manning (In re Manning),* 4 BCD 304, 305 (Bankr.D.Conn.1978); *In re Waterman Steamship Corp.,* 59 B.R. 724, 727 (Bankr.S.D.N.Y.1986).

It appears from the affidavit submitted by Orenstein that he was contacted by letter from the Trustee on or about January 11, 1988, shortly after the Trustee's appointment, yet no effort was apparently made to seek Orenstein's appointment as special counsel and no order of appointment ever entered. The lack of appointment is described as being the result of a misunderstanding between the Trustee and Orenstein. No where is there any allegation by Orenstein that he was led by the Trustee to believe that he would be or had been appointed as special counsel, on which he relied to his detriment.

■ Turning finally to the Trustee's argument that the Court should invoke its power under Code § 105, the Court simply observes that Code § 105 cannot be utilized to circumvent Code § 327(e).

■ The Trustee's alternative contention that Orenstein should be compensated pursuant to Code § 503(b)(3) or (4) would be applicable were Orenstein's post-conversion services not rendered in the capacity of debtor's counsel. When Orenstein rendered services as Debtor's counsel, it placed him squarely within the requirement of Code § 327(e) and the necessity for appointment became a prerequisite to compensation regardless of Orenstein's pre-petition creditor status.

Thus, Orenstein may be compensated for all of the services rendered to Debtor in the matrimonial action through November 19, 1987, but not thereafter.

In examining Orenstein's affidavit, it appears that a total of 7.5 hours $125.00 or $937.50 may be paid by the Trustee. In addition, the Court will presume that all of

the disbursements were incurred pre-conversion, and will direct reimbursement of expenses in the sum of $223.00.

In light of the funds received by the Trustee, the Court does not believe there will be any subordination of priority claims pursuant to Code § 726(b) and thus, directs the fee and disbursements awarded herein be paid immediately.

IT IS SO ORDERED.